## CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

 v.

Kevin McKeithan

### April 22, 1996

### Case No. F-96-146

BY JUDGE DONALD W. LEMONS

This matter is before the Court on defendant's Motion to Suppress evidence seized from him in a warrantless search on October 18, 1995.

The Court makes the following findings of fact. On October 18, 1995, Officer Frank L. Misiano was conducting a drug surveillance operation at the corner of Clay Street and Chimborazzo Boulevard in the City of Richmond. The following exchange at the hearing describes what he observed:

Q. Can you describe what you saw?

A. I saw a female approach him, hand him some money. He then reached into his crotch area, pulled out a plastic baggy, reached into the plastic baggy, put something in her hand from that plastic baggy and had taken money in exchange for that item.

Q. Were you able to see what it was that he put in her hand?

A. Looked like a small white rock-like substance.

Q. Did you observe anything else?

A. At that time the female walked off on foot walking west on Clay Street. At that point I wanted to call the take-down team in. The defendant then tied the plastic baggy up into a knot, placed a piece of white paper around it and put it back into his crotch area.

Transcript of hearing, February 23, 1996, p. 8, line 3-20.

The officer observed this behavior from a distance of thirty to forty feet and he was aided by binoculars with a 10 x 50 magnification. The officer was able to observe the substance that the defendant gave to the female purchaser and the substance that was placed back into the defendant's crotch area. The officer testified that based on his experience and training the substance appeared to be cocaine. As the officer was notifying the "take-down team" by radio transmission, he observed the defendant "[reach] down into his crotch area and [make] a motion around to his rear area." (Transcript, p. 12, ll. 6-8). By radio, the officer informed the "take-down team" of this movement of the defendant's hands to his rear area.

When Officer Graves, as a part of the "take-down team," approached the defendant, he placed him under arrest (Transcript, p. 21, ll. 15-17). The radio transmission from Officer Misiano gave Officer Graves probable cause to arrest McKeithan. " 'So long as the officer who orders an arrest or search has knowledge of facts establishing probable cause, it is not necessary for the officers actually making the arrest or conducting the search to be personally aware of those facts'." *Payne v. Commonwealth*, 1995 Va. App. LEXIS 89, (Ct. of Appeals, February 7, 1995) (unpublished opinion), *quoting, United States v. Laughman*, 618 F.2d 1067, 1072 (4th Cir.), *cert. denied*, 447 U.S. 925 (1980).

Having arrested the defendant and having probable cause to believe that contraband was concealed in the defendant's pants, Officer Graves began searching the defendant, first searching the defendant's crotch area. This was accomplished by pulling the defendant's waistband out and shining a flashlight down the front of his pants and by reaching into the crotch area with his hand to determine if any contraband was present. Upon finding nothing in that area and upon being informed by another officer that Officer Misiano told them that the defendant had moved his hand from his front to his buttocks area, Officer Graves moved to the defendant's rear. Without pulling down the defendant's pants and with another officer holding the flashlight, Officer Graves "pulled the subject's pants back, reached in and retrieved the drugs." (Transcript, p. 22, ll. 8-9.) Officer Graves' testimony is corroborated by Officer Misiano who continued to watch the

arrest through binoculars. (Transcript, p. 13, ll. 10-12.) The drugs were located in between the defendant's buttocks and the Court finds that the officer did not penetrate the defendant's anus with his fingers in order to retrieve the drugs. Furthermore, the event occurred at night and, other than the police officers and the defendant, no other persons were present at the scene. Some people were located a half a block away. At no time did the officer pull down the defendant's pants so that the defendants genitals or buttocks were exposed to anyone other than the officers conducting the search.

The defendant claims that his pants were taken down and the officer penetrated his anus with his fingers in full view of onlookers and that he required medical treatment for injury to his anus. The two officers testified to the contrary and were more credible than the defendant. Furthermore, the defendant offered no medical evidence or records in support of his claim.

The Court finds that the officers had reasonable articulable suspicion to stop the defendant and probable cause to arrest and search him. Further, the Court finds that the scope and extent of the search of the defendant does not violate the Fourth Amendment nor does it violate the terms of § 19.2-59.1 of the Code of Virginia.

Defendant alleges that the search in this case violated the terms of Virginia Code § 19.2-59.1. The provisions of this statute must be strictly construed and consequently, the Court finds that its application is limited by its terms to searches involving a "person in custodial arrest for a traffic infraction, Class 3 or Class 4 misdemeanor, or a violation of a city, county, or town ordinance, which is punishable by no more than thirty days in jail . . ." The arrest in this case was for the felony of possession of cocaine with the intent to distribute. Section 19.2-59.1 does not apply to this case.

The Supreme Court of the United States has noted:

> [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *See also*, John H. Derrick, Annotation, *Fourth Amendment as Prohibiting Strip Searches of Arrestees*

*or Pretrial Detainees*, 78 A.L.R. Fed. 201 (1986). This balancing of interests requires a case-by-case analysis.

In *United States v. Bazy*, 1994 WL 539300 (D. Kan., August 29, 1994) (unpublished opinion), the Kansas highway patrol stopped a car, in which Bazy was a passenger, for speeding. The driver, Sean Parker, admitted to Trooper Brockman that he was driving on a suspended operator's license. After issuing the traffic tickets to Parker, Trooper Brockman informed the defendants that they were free to leave, but asked if he could search the car. Parker consented to the search of the vehicle.

During the search of the vehicle, the trooper discovered a loaded gun under the seat where Bazy had been sitting. Having found the gun, Trooper Brockman conducted a pat-down search for weapons of Bazy and Parker. The pat-down of Parker revealed that he was carrying a pager and a large plastic bag containing several smaller plastic bags. Having found these items, Trooper Brockman placed Bazy and Parker in handcuffs.

While Trooper Brockman was searching Bazy and Parker, Trooper Bryan was searching the vehicle with the assistance of a narcotics canine. Trooper Bryan's search of the vehicle uncovered a crack pipe and a rolling machine in the glove compartment. Additionally, the dog "showed interest" in the seat belt retractor near the driver's door.

After Trooper Brockman read the defendants their rights under *Miranda*, he moved the defendants away from the highway. In the process of moving the defendants, Trooper Brockman discovered a block of cocaine in Bazy's right trouser leg. After another trooper, Trooper Marmon, discovered a second block of cocaine on Bazy, Bazy and Parker were separated. During this time, Bazy was continually squirming. Trooper Brockman took Bazy behind the patrol car, obstructing the view of oncoming traffic. While behind the patrol car, Trooper Brockman unbuckled Bazy's pants and pulled Bazy's pants away from Bazy's waist. The trooper saw a plastic-wrapped substance lodged between Bazy's buttocks. After donning plastic gloves, Trooper Brockman retrieved cocaine from Bazy's buttocks. The troopers went through the same procedure with Parker and retrieved cocaine from under Parker's scrotum.

Addressing the constitutionality of the search, the United States District Court for the District of Kansas noted that the facts clearly demonstrated that the troopers had arrested Bazy and Parker and had probable cause to believe that Bazy and Parker had more cocaine secreted somewhere on their persons. Having made these findings, the Court held that for the search to pass constitutional muster two additional factors were needed.

First, some exigency had to exist to justify conducting the search without a warrant. Secondly, the circumstances surrounding the manner and scope of the search had to be "reasonable."

The Court found two exigent circumstances that justified conducting the search without a warrant. First, there was a real possibility that the defendants would try to dispose of or further conceal the cocaine if they were not searched immediately. Secondly, the court reasoned that allowing the defendants to continue to carry the cocaine on and in their persons presented a health risk to the defendants.

Satisfied that there were exigent circumstances to justify a warrantless search, the court turned to the question of whether the scope and conduct of the search was reasonable. The court prefaced its inquiry by noting that "[b]ecause they are a serious intrusion into an individual's privacy, strip searches are justified in only certain circumstances and rarely, if ever, justified in public. Searches akin to strip searches[1] can be justified in public places if limited in scope and required by unusual circumstances." *Bazy*, 1994 WL 539300, *8.

The court found that the facts and circumstances surrounding the search in *Bazy* justified the search and stated:

> [p]robable cause that an arrestee is hiding something on his body does not justify conducting on a public street a strip search or some search akin to one. There must be other circumstances present which prevent an officer from waiting until the arrestee can be moved to a private location, like the station house. For all of the reasons explained above, the court believes that such unusual circumstances existed here making it reasonable to conduct a limited public intrusive search. The court finds that the search was not unreasonable under the Fourth Amendment and did not violate the defendant's due process rights under the Fifth Amendment.

*Id.*

In *State v. Smith*, 454 S.E.2d 680 (N.C. App. 1995), *rev'd*, 464 S.E.2d 45 (N.C. 1995), the police were alerted by a confidential informant that

---

[1] It is clear from the context of the case that the *Bazy* court would not define "strip search" as that term is defined by Va. Code § 19.2-59.1. The *Bazy* court defined the search in question as "something akin to a strip search." The facts in this case are remarkably similar to *Bazy*.

Smith would be transporting cocaine, where Smith would be, and that the cocaine would be kept in Smith's crotch. After corroborating the informant's statements, the police proceeded to the designated location. At the location, the officers detained Smith and began to search him. The officers instructed Smith to stand behind the door of the patrol car, and one of the officers positioned himself between the street and the defendant. The officers instructed Smith to open his pants, and Smith complied. Unable to see underneath Smith's scrotum and testicles, the officers instructed Smith to pull down his underwear. When the defendant refused, an officer held open the defendant's underwear and slid it down. At this point, the officer noticed a piece of paper towel protruding from under Smith's scrotum. The officer retrieved the paper towel, which contained crack cocaine. The trial court denied the defendant's motion to suppress the cocaine, and the defendant appealed.

Over a vigorous dissent by Judge Walker, the North Carolina Court of Appeals reversed the decision of the trial court, holding that the search "violated the Fourth Amendment through its intolerable intensity and scope." *Smith*, 454 S.E.2d at 685. Relying on *Bazy*, Judge Walker found that the officers had probable cause to search the defendant, that exigent circumstances were present, and that the search was reasonable. Judge Walker noted that "[w]hile there may have been less intrusive means of conducting the search . . . the availability of those less intrusive means does not automatically transform an otherwise reasonable search into a Fourth Amendment violation." *Id.* at 687 (Walker, J. dissenting). The North Carolina Supreme Court reversed the decision of the Court of Appeals "for the reasons stated in the dissenting opinion of Judge Walker." *Smith*, 464 S.E.2d at 45.

In *United States v. Murray*, 22 F.3d 1185, 1994 WL 119009 (D.C. Cir. April 1, 1994) (unpublished opinion), Murray was arrested by Officer Ralph Nitz, who had witnessed Murray participate in a drug transaction. At the end of the transaction, Nitz observed Murray place the drugs in the rear of his pants. After Officer Nitz and other officers had arrested Murray, they attempted to search the area of his body where Officer Nitz had seen him place the drugs. Murray resisted these attempts and attempted to push the drugs deep into his buttocks. "Confronted with this situation, the officers restrained Mr. Murray and loosened his pants so that they could reach inside." *Murray*, 1994 WL 119009, **1. The officer moved his hand to Murray's buttocks and retrieved a plastic bag containing cocaine. At trial, the defendant moved to suppress the cocaine. The United States

District Court for the District of Columbia denied the motion to suppress. Murray appealed the decision to the United States Court of Appeals, District of Columbia Circuit, "arguing that the search was unreasonably invasive under the Fourth Amendment and that it amounted to a denial of due process of law under the Fifth Amendment." *Id.*

A panel of the Court of Appeals affirmed the ruling of the District Court. The Court held that:

> [u]nder the circumstances, the officers were justified in believing that Mr. Murray had hidden drugs inside the rear of his pants and that he was attempting to push the drugs into his rectum. Had he succeeded, the police might have been required to obtain a warrant for a cavity search or to await a bowel movement to recover the evidence. While this prospect would not justify a strip search on a public street, a very limited intrusion of the sort occurring here is not unreasonable. We wish to make it clear, however, that such public intrusions should not be the norm. Ordinarily, when police wish to search the private areas of an arrestee's person incident to arrest, they should first remove the arrestee to a private location — i.e., a private room in the station house. The circumstances of this case, however, were unusual. The officers knew that Mr. Murray was concealing drugs in the rear of his pants, and they observed him trying to push those drugs into his rectum. Under these circumstances, and given the very limited scope of the intrusion, we think the motion to suppress was properly denied.

*Id.*

All suppression motions in search and seizure cases involve a delicate balancing of interests in the pursuit of "reasonableness." The jurisprudence has recognized greater and lesser levels of intrusions into a person's privacy interests. Similarly, various degrees of governmental need have been recognized as necessary to justify certain intrusions. Although the facts of this case do not support a finding that a body cavity search or visual inspection of a body cavity took place, there was nonetheless, a significant intrusion upon the defendant's privacy interests. In consideration of the justification for the intrusion, the Court considers the following.

1. The defendant was observed from very close range with 10 x 50 power binoculars distributing a white rock-like substance which the officer reasonably believed to be cocaine.

2. Further, the officer saw the defendant place the supply of drugs in his pants in his crotch area and subsequently take action that a reasonable person could conclude was deliberate movement of the drug supply from the inside front of his pants to the inside rear of his pants.

3. Another officer, a member of the "take-down team," immediately placed the defendant under arrest. The Court finds sufficient probable cause for the arrest. Additionally, the Court finds sufficient probable cause that the defendant had hidden drugs in his pants.

4. The search took place at night away from the inspection of onlookers (other than police), the closest of which was one-half block away.

5. The officer conducting the search did not remove or lower the defendant's pants.

6. The drugs were not located in a body cavity, rather, they were found between the buttocks.

7. The exigent circumstances for the search include the possibility that the defendant would (a) dislodge the evidence and attempt to dispose of it before or during transport to a secure and more private place for the search, or (b) cause the evidence to become lodged in the anus making the subsequent search even more invasive in nature.

8. Further, exigent circumstances may include concern for the health of the defendant if he did seek to further hide the drugs in a body cavity. Ironically, once in police custody, the level of police concern for the safety and welfare of the defendant in this instance would properly surpass the defendant's own concern.

That the officers might have transported the defendant to a different location and conducted the search is not the issue. The issue is whether concern for the preservation of the evidence, the potential for an even greater intrusion if the drugs were further hidden in a body cavity and the health and welfare of the defendant combined to provide the requisite exigent circumstances to justify this search and whether the search was conducted in a reasonable manner. The Court finds that under the totality of the circumstances, by a preponderance of the evidence, the search and seizure was supported by sufficient exigent circumstances and was reasonable in scope and manner. The defendant's Motion to Suppress is denied.